UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

──────────────────────────────────x

DISTRACTIFY, INC.

        Plaintiff,               Case No.: 1:17-cv-04832

v.

                                            **COMPLAINT**

BRAINJOLT, LLC,

        Defendant.             **DEMAND FOR JURY TRIAL**

──────────────────────────────────x

    **1.** Plaintiff Distractify, Inc. ("Distractify" or "Plaintiff"), by and through its undersigned counsel, Falcon Jacobson & Gertler LLP, bring this Complaint against defendant Brainjolt, LLC ("Defendant" or "Brainjolt") for infringing Distractify's exclusive rights under the Copyright Act (17 U.S.C. § 101 *et seq.*), and for unfairly competing with, and unjustly enriching itself at the expense of Distractify. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and 17 U.S.C. §§ 501(b), 1203(a). Plaintiff alleges, upon knowledge as to itself and upon information and belief as to all other matters, as follows:

**NATURE OF ACTION**

    **2.** This action arises out of, *inter alia*, Defendant's brazen, willful and continuing violation of Plaintiff's exclusive rights in and to more than fifty of Plaintiff's copyrighted original compilations, works of authorship and other content. In brief, Defendant has repeatedly—without any defense or justification—committed acts amounting to digital piracy and plagiarism, and has intentionally used, commercialized, copied, distributed, sold, publicly

displayed and otherwise exploited Plaintiff's copyrighted works without Plaintiff's consent, and has unjustly enriched itself at Plaintiff's expense by usurping the market for Plaintiff's copyrighted works.

3.     Defendant is Plaintiff's direct competitor, and utilizes its infringing content in Plaintiff's precise stream of commerce, taking calculated steps to increase its own revenues while simultaneously driving Plaintiff out of the marketplace.  This has had a direct, immediate and continuing negative impact on Plaintiff's business operations.

4.     Plaintiff is entitled to all legal, equitable, injunctive and/or financial relief, as requested herein, including the recovery of damages and the imposition of a permanent injunction precluding the Defendant, and the Defendant's officers, agents, representatives and assigns from using, commercializing, manufacturing, distributing, selling, licensing and/or otherwise exploiting Plaintiff's copyrighted works and content.

## JURISDICTION AND VENUE

5.     This Court has original and exclusive jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367.

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, and Plaintiff and Defendant are citizens of different states.

7.     Venue is properly laid in this District pursuant to 28 U.S.C. §1391 in that, upon information and belief, the Defendant is subject to personal jurisdiction in this District, transacts business in this judicial District, a substantial part of the events giving rise to Plaintiff's causes of action occurred in this District and/or Plaintiff suffered injury within this judicial district.

**PARTIES**

**8.** Plaintiff, Distractify, is a corporation existing by and under the laws of the State of Delaware, maintaining offices in New York, New York. Distractify is a leading entertainment company in the mobile era.

**9.** Defendant, Brainjolt LLC, is a limited liability company existing by and under the laws of the State of Minnesota, maintaining offices in Pasadena, California.

**FACTS COMMON TO ALL COUNTS**

**A.    Background**

**10.** Distractify is an Internet based entertainment and media company, created by self-proclaimed Internet junkies who sought to provide top quality original and curated content to end users wishing to stymie boredom at home, during their commute or at the workplace.

**11.** Distractify maintains a webpage located at the web address *www.distractify.com*, and numerous subpages, which are updated with new media and content at varying intervals on a daily basis. Distractify also maintains web and social media presences on Facebook, Instagram, Twitter and Youtube, among other platforms (collectively referred to with *distractify.com* as Distractify's "Web Properties").

**12.** Distractify regularly publishes original media and other content, which is made available to the public on its aforementioned Web Properties.

**13.** Among other shareable content generated and published by Distractify, such videos and news articles, Distractify publishes "listicles", – a piece of writing or other content presented wholly or partly in the form of a list.

**14.** In realm of Internet journalism and blogging, listicles have emerged as a popular and highly effective medium for conveying images or information, together with sufficient copy, to be published as an online article. Listicles may imply a qualitative judgment, take the form of

a countdown, or, rather than impart a particular value to the underlying content, group data, images or video by theme.[1]

15. Popular websites, such as Distractify, Buzzfeed and others garner the attention of millions of online content seekers by publishing original articles and listicles detailing trending, humorous or newsworthy topics.

16. Indeed, Distractify's listicles, and other original and licensed content draw over thirty million unique viewers to its Web Properties each month, and hyperlinks to content on Distractify's Web Properties have been posted, re-tweeted and shared by delighted Internet users hundreds of thousands (if not millions) of times.

### B. The Nature of Distractify's Business

17. As stated above, Distractify generates and publishes media for distribution over the Internet.

18. Generally, the amount of revenue generated by or attributable to specific content published by Distractify is determined by its popularity and accessibility to Internet users.

19. As will be discussed in greater detail below, Defendant, by misappropriating Distractify's online media and distributing it to Distractify's target audience on its own web pages, significantly disrupts Distractify's key revenue streams by, in relevant part, devaluing Distractify's ad space and impeding Distractify's ability to engage key third parties in the promotion of its content.

#### (1) Traditional Pay-Per-Click Advertising

20. Distractify generates revenue, in part, by way of selling advertising space and by marketing sponsored content on its Web Properties.

---

[1] General information and background concerning the portmantreau "listicle" available at *https://en.wikipedia.org/wiki/Listicle* (accessed June 26, 2017).

21.     By way of example, when an end user views an article on Distractify's webpage, such as Distractify's popular July 2016 article chronicling the stories of twenty women who shared what it was like when their boyfriend proposed, advertisements will display above the article, and in the "margins" of the webpage.[2]

22.     The amount of revenue Distractify generates from the advertisements displayed surrounding its articles, in most instances, is a function of the number of "views" or "clicks" that the article generates (e.g. an advertiser will pay Distractify $.01 each time an advertisement accompanying the article is viewed by an individual scrolling past the ad on their web browser, smartphone or tablet).

23.     For Distractify, increased traffic to its Web Properties directly results in increased ad revenue. Moreover, because Distractify's content is known to generate significant page views, Distractify is in a position to charge would-be advertisers a higher amount per view or click.

### (2)     The Relationship between Advertising Revenues, Partner Pages, Shares and Likes

24.     Distractify increases its web traffic, and in turn increases the value of its advertising space, by bidding for traffic from influencer and partner pages, such as Facebook.

25.     By way of example, Distractify will participate in an online "auction" to have its content, such as the above-mentioned article, hosted on a partner page.

26.     If Distractify is successful in an online auction, the partner page will host the subject article for a period of time, in exchange for a portion of the revenue Distractify generates from the article's viewership (e.g. if an advertiser is paying Distractify .01 per view, Distractify will pay .002 of that revenue to Facebook for sponsoring or hosting Distractify's article).

---

[2] See *http://www.distractify.com/sex-relationships/2016/07/07/marriage-proposal-thoughts* (Accessed June 26, 2017).

27. On social media webpages and applications, the hosted content will often appear "in-line" on the end user's newsfeed, as if was posted by one of their peers.

28. Thus, the display prompts the end user to click or view the hosted article, or otherwise visit the Web Properties.

29. The increased web traffic from partner pages increases Distractify's overall revenue because the increased clicks and views result in increased payments from advertisers, and enable Distractify to generally charge higher prices for ad space.

30. This increased revenue, in turn, allows Distractify to submit more competitive bids for content hosting to partners and influencers at future auctions.

31. At its simplest form, the amount of revenue a content provider generates is a metric of the number of "clicks" or "views" its articles receive.

32. As such, the amount of revenue Distractify generates from a particular article is directly influenced by (1) whether influencer or partner pages are willing to host Distractify's content; (2) the percentage revenue share that Distractify is able offer to partner pages; and (3) the amount of clicks or views Distractify's articles receive—many of which are a directly result of the aforementioned web traffic obtained from partner and influencer pages.

### C. Distractify's Copyrighted Content

33. In order to organically develop a following, Distractify employs writers who author and compile top quality original content, such as articles, listicles and other popular media.

34. Within the past calendar year alone, Distractify has authored and published hundreds of virally popular online works including, by way of example, the following:

a. The Distractify article entitled "25 People Share the Disastrous Weddings They Attended that Probably Ended in Divorce", first published on Distractify's Web Properties on June 16, 2016, and currently accessible at the URL http://distractify.com/trending/2016/06/16/weddings-end-in-divorce;

b. The Distractify article entitled "20 Times When Anna Kendrick's Twitter Made 2016 Actually Bearable", first published on Distractify's Web Properties on December 13, 2016, and currently accessible at the URL http://distractify.com/entertainment/2016/12/13/anna-kendrick-ftw;

c. The Distractify article entitled "8 Simple Ways to Free Up Space on Your iPhone Without Deleting Photos", first published on Distractify's Web Properties on December 30, 2016, and currently accessible at the URL http://distractify.com/fyi/2016/12/30/iphone-photo-storage-tips;

d. The Distractify article entitled "Cheater Accidentally Receives Life Changing Advcie When She Texted a Complete Stranger", first published on Distractify's Web Properties on January 30, 2017, and currently accessible at the URL http://distractify.com/sex-relationships/2017/01/30/cheater-accidentally-receives-life-changing-advice-when-she-texted-a-complete-stranger; and

e. The Distractify article entitled "Teen Uses Spotify Playlist to Break Up With Boyfriend", first published on Distractify's Web Properties on April 10, 2017, accessible at http://www.distractify.com/trending/2017/04/10/ZEI2Kb/spotify-playlist-breakup.

35. A non-exhaustive list of original Distractify articles, content, compilations and works of authorship, including, but not limited to published articles, lists, and other media is

annexed hereto as **Exhibit A** and is hereby incorporated by reference (the "Distractify Article Names" enumerated in **Exhibit A** collectively referred to as the "Copyrighted Works", with each title enumerated therein being a "Copyrighted Work").

### D.    The Nature of Defendant's Business

36.   Defendant purports to be a digital agency that reaches hundreds of millions of people with "highly engaging, smile inducing content"—tapping into of America every month with its various sub-brands, including *www.twentytwowords.com* ("Twenty-Two Words").[3]

37.   Twenty-Two Words' intended goal is to "Fight Boredom, Spread Happiness", a purpose virtually identical to that of Distractify.

38.   In reality, Defendant and Twenty-Two Words are serial infringers of Distractify's Copyrighted Works.

39.   Distractify is informed and believes that the Defendant does nothing more than "farm" online content from authors and content providers such as Distractify, repackaging Distractify's Copyrighted Works (in many instances, copying the body of the text or compilation verbatim and altering, at most, a word or two in the copy or title of an article), posting the infringing work on Twenty-Two Words, and capitalizing on the advertising revenue generated when the underlying Copyrighted Works go viral.

40.   Distractify is informed and believes that Defendant is the sole owner and operator of Defendant's sub-brands, including Twenty-Two Words.

41.   Distractify is informed and believes that Defendant, or Defendant's officers, agents and employees, make all material decisions concerning content procured and published by Twenty-Two Words.

---

[3] See http://brainjoltmedia.com/ (Accessed June 26, 2017).

**42.**     Plaintiff is informed and believes that Defendant and Twenty-Two Words transact business in the same market as that for the consumption of Plaintiff's Copyrighted Works.

**43.**     Twenty-Two Words features articles, listicles, media and other content, displayed in a format similar to that of Distractify.

**44.**     Plaintiff is informed and believes that Defendant generates revenue by way of selling advertising space above, surrounding and in the margins of web pages on which it displays its articles and other content.

**45.**     Plaintiff is informed and believes that Defendant participates in online auctions to have its content hosted on influencer and partner pages, in an effort to increase web traffic.

### E.     Defendant's Unlawful Exploitation of Distractify's Copyrighted Works

**46.**     Distractify published the content and Copyrighted Works included in **Exhibit A** on its Web Properties at the URLs set forth therein.

**47.**     Shortly after each Copyrighted Work was published by Distractify, Defendant copied all, or substantially all of the Copyrighted Work, and re-published same at a Twenty-Two Words' web address set forth in **Exhibit A**.

**48.**     At no relevant time did Distractify grant Defendant a right to reproduce, prepare a derivative work of, distribute, publicly display, manufacture or otherwise exploit its content or the Copyrighted Works, in whole or in part.

**49.**     Defendant, by Abby Heugel, or Defendant's other officers, agents and employees whose identities are unknown to Distractify, reproduced, created derivative works of, distributed, publicly displayed and otherwise exploited Distractify's content and the Copyrighted Works, in whole and in part, without the permission of Distractify.

50. By way of example:

    a. Following Distractify's initial publication of the article "25 People Share the Disastrous Weddings They Attended that Probably Ended in Divorce", on June 16, 2016, Defendant posted an article entitled "25 Marriages That Were Destined for Trouble According To These Disastrous Wedding Stories!" on Twenty-Two Words, available at http://twentytwowords.com/marriages-that-were-destined-for-trouble-according-to-these-disastrous-wedding-stories/. Defendant unlawfully copied, reproduced, publicly displayed and Distractify's Copyrighted Work in its entirety, and for Defendant's own pecuniary gain at the expense of Distractify:



*http://www.distractify.com/trending/2016/06/16/weddings-end-in-divorce*



*http://twentytwowords.com/marriages-that-were-destined-for-trouble-according-to-these-disastrous-wedding-stories/*

10



*http://www.distractify.com/trending/2016/06/16/weddings-end-in-divorce*



*http://twentytwowords.com/marriages-that-were-destined-for-trouble-according-to-these-disastrous-wedding-stories/*

    **b.** More recently, following Distractify's initial publication of the article "Teen Uses Spotify Playlist to Break Up With Boyfriend" on April 10, 2017, Defendant posted an article titled "This Teen Got Creative To Savagely Break Up With Her Boyfriend" on Twenty-Two Words, available at http://twentytwowords.com/this-teen-got-creative-to-savagely-break-up-with-her-boyfriend/. Again, Defendant impermissibly reproduced and publicly displayed a copyrighted compilation authored by Distractify on Twenty-Two Words:

11



*http://www.distractify.com/trending/2017/04/10/ZEI2Kb/spotify-playlist-breakup*



*http://twentytwowords.com/this-teen-got-creative-to-savagely-break-up-with-her-boyfriend/*

      **c.** Moreover, on or about June 12, 2017, following Distractify's initial publication of the article "This Kid Who Got a Brain Freeze During An Icee Challenge is a True Hero"—an article consisting of both copy and a selection of unique tweets and images—Defendant posted an article titled "Kid Gets Crushed by a Brain Freeze During an Epic Icee Challenge", consisting of copy and a selection of the same tweets and images:

12



*http://www.distractify.com/trending/2017/06/12/Z1B1uN3/icee-challenge-kid*



*http://twentytwowords.com/kid-gets-crushed-by-a-brain-freeze-during-an-epic-icee-challenge/*

   **d.** The same, or a similar process, was repeated by Defendant with respect to each Copyrighted Work. See **Exhibit A**.

 **51.** Defendant has repeatedly and habitually stolen the unique and copyrightable elements of Distractify's Copyrighted Works—or else has taken the Copyrighted Works in their entirety—posting Distractify's content on Twenty-Two Words and claiming it as its own.

 **52.** After unlawfully copying and conforming Distractify's Copyrighted Works as Defendant sees fit, in some instances, the Defendant alters the wording of the titles or copy to the Copyrighted Works, masquerading the Copyrighted Works as Defendant's own in a failed effort to escape liability.

53. The Defendant's malintent is further accentuated by the fact that Defendant has not once contacted Distractify to obtain a license to reproduce or display any of Distractify's Copyrighted Works on Twenty-Two Words.

54. By Defendant's own admission, each Copyrighted Work reproduced, publicly displayed or otherwise exploited by Defendants reaches a significant number of Internet users in New York state, across America and the world.

55. Furthermore, because Distractify and Defendant operate within the same online marketplace for content viewership, web traffic and ad related revenues, Defendant's copying of all or part of Distractify's Copyrighted Works cannot qualify as a "fair use" of the Copyrighted Works.

56. Defendant has usurped a significant portion of the market for Distractify's Copyrighted Works, and has made it difficult—if not impossible—for Distractify to compete in auctions for web traffic driven by third parties.

57. In relevant part, Defendant will outbid Distractify to display the infringing content, resulting in less traffic to Distractify's Web Properties.

58. Defendant has achieved millions of page views and made significant revenues at the expense of Distractify.

59. Defendant has not, at any relevant time, made payment to Distractify for its unlawful reproduction, creation of derivative works of, distribution, public display and other exploitation of Distractify's copyrighted works.

60. On or about April 4, 2017, Distractify, by counsel at Darrow Everett LLP, sent correspondence (the "April 4 Letter") to Joshua Sowin, chief executive officer of the Defendant, demanding that Defendant cease and desist its unlawful activities.

61. The April 4 Letter cited to not less than forty four unique acts of infringement by Defendant.

62. Defendant has persisted in its unlawful activities to date.

63. Each and every instance of copyrighted infringement cited in the April 4 Letter has continued, and Defendant has not removed or taken down any infringing content or otherwise responded to the April 4 Letter.

64. Defendant has not obtained a license to exploit Distractify's Copyrighted Works and has not otherwise remitted any payment to Distractify for its continuing use of the Copyrighted Works to date.

## CAUSES OF ACTION

## AS AND FOR A FIRST CAUSE OF ACTION:

## DIRECT COPYRIGHT INFRINGEMENT

65. Plaintiff reincorporates each and every preceding paragraph as though fully set forth herein and further alleges:

66. Plaintiff is and has always been the sole owner of the copyright for Copyrighted Works.

67. Plaintiff has submitted applications to register the Copyrighted Works with the Copyright Office in accordance with the applicable statute, and is the holder and sole owner of a federal copyright registration for the Copyrighted Works pursuant to The Copyright Act, 17 U.S.C §101 *et seq.* (See **Exhibit A**).

68. Defendant directly infringed Plaintiff's copyright interest and exclusive rights, in and relating to Copyrighted Works, under copyright law by manufacturing, distributing, using, publicly displaying, reproducing, commercializing, selling, licensing and/or otherwise exploiting

the Copyrighted Works without Plaintiff's authorization or consent, all in violation of The Copyright Act, 17 U.S.C. §§ 106, 115 and 501.

69. The foregoing acts of infringement by the Defendant have been willful, intentional, purposeful and with a complete disregard for Plaintiff's rights in and to the Copyrighted Works.

70. Defendant knew or should have known that Defendant had no license to use the Copyrighted Works for profit on its webpages.

71. Defendant failed to seek Plaintiff's authorization or consent to manufacture, distribute, copy, use, commercialize, display, reproduce, sell, license and/or otherwise exploit the Copyrighted Works.

72. Defendant failed to compensate Plaintiff for their exploitations of the Copyrighted Works in any way.

73. As a direct and proximate result of the Defendant's copyright infringement, Plaintiff has suffered and will continue to suffer severe injuries and damages and is entitled to actual damages and Defendant's gross revenue and/or profits derived by Defendant that are attributable to Defendant's direct infringement of Plaintiff's rights in the Copyrighted Works pursuant to 17 U.S.C. § 504(b). Plaintiff may also elect to be awarded statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. § 504(c) and/or attorneys' fees pursuant to 17 U.S.C. § 505.

74. Plaintiff's exact amount of actual damages cannot be computed in terms of dollars. Defendant's infringement of Plaintiff's copyrights and exclusive rights, in and relating to the Copyrighted Works, must be enjoined by this Honorable Court, and all copies and/or uses of the Copyrighted Works by Defendant must be turned over to Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION:

## UNJUST ENRICHMENT

**75.** Plaintiffs reincorporate each and every preceding paragraph as though fully set forth herein and further alleges:

**76.** Defendant benefitted from their unauthorized use of the Copyrighted Works on its websites.

**77.** Defendant received this benefit at Plaintiffs expense, as Defendant altogether failed to compensate Plaintiff for their unauthorized use of the Copyrighted Works.

**78.** By reason of the foregoing, Defendant has become unjustly enriched at Plaintiff's expense by failing to license the rights to use the Copyrighted Works and by realizing monetary gain from their unauthorized use of the Copyrighted Works.

**79.** The amount by which Defendant has been unjustly enriched cannot be precisely ascertained at this time, but will be ascertained according to proof at trial.

## AS AND FOR A THIRD CAUSE OF ACTION:

## CONTRIBUTORY COPYRIGHT INFRIGEMENT

**80.** Plaintiffs reincorporate each and every preceding paragraph as though fully set forth herein and further alleges:

**81.** Defendant willfully, knowingly and intentionally induced, caused, encouraged and/or assisted third parties, such as Twenty-Two Words and others, in the unlawful distribution, use, commercialization, sale, display, license and/or other exploitation of the Copyrighted Works, even though Defendant knew that they did not have the copyright owner's (i.e. Plaintiff's) authorization or consent to do so.

**82.** Through this conduct, namely providing the Copyrighted Works to Twenty-Two

Words and others, for commercial and/or advertising purposes, Defendant engaged in the business of knowingly inducing, causing, encouraging, assisting and/or materially contributing to the above-described unauthorized distribution, display, use, commercialization, selling, licensing and/or other exploitation of the Copyrighted Works; thereby infringing Plaintiff's copyrights and exclusive rights, in and relating to Copyrighted Works under copyright law.

83. The foregoing acts by the Defendant have been willful, intentional and purposeful.

84. The acts of the Defendant, as alleged herein, constitute contributory infringement of Plaintiff's copyrights and exclusive rights, in and relating to the Copyrighted Works under copyright law in violation of the Copyright Act, 17 U.S.C. §106, 115 and 501.

85. As a direct and proximate result of the contributory infringement by the Defendant, Plaintiff is entitled to actual damages and any gross revenue and/or profits derived by the Defendant pursuant to 17 U.S.C. §504(b). Plaintiff may also elect to be awarded statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c) and/or attorneys' fees pursuant to 17 U.S.C. §505.

86. Plaintiff's exact amount of actual damages cannot be computed in terms of dollars. Instead, Defendant's contributory copyright infringement of Plaintiff's rights in and to the Copyrighted Works must be enjoined by the Court in order to avoid irreparable harm to the Plaintiff.

## AS AND FOR A FOURTH CAUSE OF ACTION:
## COMMON LAW UNFAIR COMPETITION

87. Plaintiffs reincorporate each and every preceding paragraph as though fully set forth herein and further alleges:

**88.** The Defendant has acted unfairly by engaging in the bad faith misappropriation of Distractify's labor, skill, expenditures, proprietary information and/or trade secrets by exploiting same for Defendant's commercial advantage in connection with online auctions for increased web traffic.

**89.** The Defendant misappropriated a commercial advantage belonging to Distractify because Distractify uses its labor, skill, expenditures, proprietary information and/or trade secrets in connection with online auctions to drive increased web traffic to its Web Properties.

**90.** Distractify's property rights in its labor, skill, expenditures, proprietary information and/or trade secrets have been misappropriated by Defendant for Defendant's commercial advantage.

**91.** Plaintiff's exact amount of actual damages cannot be computed in terms of dollars. Instead, Defendant's unfair competition with Plaintiff must be enjoined by the Court in order to avoid irreparable harm to the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays to the Court for an order or judgment against the Defendant, jointly and severally:

**A.** On the first cause of action, an award of damages pursuant to 17 U.S.C. §504(b), the Defendant's profits in an amount to be determined at trial, statutory damages pursuant to 17 U.S.C. § 504(c) and/or attorneys' fees pursuant to 17 U.S.C. §505;

**B.** On the second cause of action, an award of damages in an amount to be proven at trial;

**C.** On the third cause of action an award of damages pursuant to 17 U.S.C. §504(b), the Defendant's profits in an amount to be determined at trial, statutory damages pursuant

to 17 U.S.C. § 504(c) and/or attorneys' fees pursuant to 17 U.S.C. §505;

D. On the fourth cause of action, an award of damages in an amount to be determined at trial, but in excess of the jurisdictional requirements of this Court;

E. A declaratory judgment of copyright infringement;

F. An order preliminarily and permanently enjoining the Defendant and Defendant's agents, servants, employees, succesors, administrators, assigns and representatives from manufacturing, distributing, reproducing, selling, distributing, copying, publicly displaying, commercializing, licensing and/or otherwise exploiting Plaintiff's Copyrighted Works;

G. Together with an order awarding Plaintiff such other and further relief as to this Court may seem just, proper and equitable, including an award of attorneys' fees, costs and expenses incurred prosecuting this action.

**DEMAND FOR JURY TRIAL**

Plaintiff **DISTRACIFY, INC.** hereby demands a jury trial on all issues triable of right by jury.

Dated: Rockville Centre, New York
June 27, 2017

Respectfully submitted,

/s/Paul M. O'Brien
By:   Paul M. O'Brien (PO1990)
         Kenneth J. Falcon (KF1204)
*Attorneys for Plaintiff*
31 East 32nd Street
4th Floor
New York, New York 10016

265 Sunrise Highway
Suite 50
Rockville Centre, New York 11570